1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JACOB RENE PADILLA,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 1:19-cv-01469-EPG

**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**

      This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 7, 8).

      At a hearing on August 27, 2020, the Court heard from the parties and, having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, finds as follows:

\\\

\\\

1    **I.      Whether the ALJ Failed to Provide Germane Reasons to Reject Lay Witness**

2    **Opinion**

3        Plaintiff first challenges the decision by the ALJ on the ground that the ALJ erred in

4    failing to provide a germane reason for disregarding lay witness testimony.

5        According to the Ninth Circuit, "[i]n determining whether a claimant is disabled, an ALJ

6    must consider lay witness testimony concerning a claimant's ability to work." *Stout v.*

7    *Comm'r,* 454 F.3d 1050, 1053 (9th Cir.2006); *see also* 20 C.F.R. §§ 404.1513(d)(4), (e). Such

8    testimony is competent evidence and "*cannot* be disregarded without comment." *Nguyen v.*

9    *Chater,* 100 F.3d 1462, 1467 (9th Cir.1996). If an ALJ disregards the testimony of a lay witness,

10   the ALJ must provide reasons "that are germane to each witness." *Id.* Further, the reasons

11   "germane to each witness" must be specific. *Stout,* 454 F.3d at 1054 (explaining that "the ALJ,

12   not the district court, is required to provide *specific* reasons for rejecting lay testimony")

13   (emphasis added).

14       Plaintiff points to testimony from Plaintiff's mother that Mr. Padilla has difficulty

15   following instructions, difficulty staying on task, and does not follow orders.  A.R. 66-68.

16   Plaintiff also notes that the vocational expert testified that no work would be available for an

17   individual of Plaintiff's age, lack of work history, and residual functional capacity if such a

18   person also needed reminders to stay "on task" every 30 minutes.  (A.R. 70-71).

19       The ALJ summarized Ms. Padilla's testimony, including that "she would not hire him as a

20   janitor to clean her office at night because he did not follow orders."  (A.R. 26).  However, the

21   ALJ did not specifically address Ms. Padilla's testimony in the remainder of the order.  The ALJ

22   did not give any reason for discounting Ms. Padilla's opinion that Plaintiff did not follow orders.

23       The Commissioner concedes that the ALJ erred in not providing any reasons for

24   disregarding Ms. Padilla's testimony.[1]  However, the Commissioner argues that such error was

25   ───────────────────

26   [1] The Commissioner argues in a footnote that the ALJ's statement that he found "the claimant's statements
concerning the intensity, persistence and limited effects of those symptoms not entirely consistent with the medical

27   evidence and other evidence in the record," should suffice because it was stated after the ALJ summarized the
testimony of both Claimant and Ms. Padilla.  The Court disagrees.  A boilerplate and vague statement about another

28   person's testimony, which does not address the specific opinion at issue, does not satisfy the Ninth Circuit's
requirement to provide *specific* reasons for rejecting lay testimony.

harmless because Ms. Padilla's testimony did not identify limitations beyond what her son alleged, and the ALJ adequately addressed reasons for giving Mr. Padilla's testimony limited weight.  The Commissioner points to the Ninth Circuit's holding in *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012) that:

> We have not, however, required the ALJ to discuss every witness's testimony on a individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness.  The applicable regulations are in accord; they require the ALJ to consider testimony from family and friends submitted on behalf of the claimant, *see* 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3), but do not require the ALJ to provide express reasons for rejecting testimony from each lay witness . . . .

*Id.* at 1114.  (internal citations omitted).  *See also Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("Mrs. Valentine's testimony of her husband's fatigue was similar to Valentine's own subjective complaints. Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted[Valentine's] allegations.' In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

Here, however, the Plaintiff did not provide "similar" testimony because he did not testify as to whether he had trouble following directions.  Similarly, none of the reasons given by the ALJ for discounting Plaintiff's testimony addressed this point.

The Court thus remands to the ALJ to consider Ms. Padilla's testimony, especially regarding her opinion that Plaintiff has difficulty following instructions, difficulty staying on task, and does not follow orders.  A.R. 66-68.

## II.      Whether the ALJ Failed to Resolve an Apparent Conflict Between Vocational Expert Testimony and the Dictionary of Occupational Titles

Plaintiff next argues that the ALJ failed to recognize and resolve the apparent conflict between the vision capability required by the jobs the vocational expert opined Plaintiff could

1    perform and the ALJ's residual functional capacity determination.  Plaintiff relies on the Ninth

2    Circuit decision of *Zavalin v. Colvin,* 778 F.3d 842(9th Cir. 2015), which held:

3

4           When there is an apparent conflict between the vocational expert's testimony and
            the DOT—for example, expert testimony that a claimant can perform an
5           occupation involving DOT requirements that appear more than the claimant can
            handle—the ALJ is required to reconcile the inconsistency. *Massachi v.*
6           *Astrue,* 486 F.3d 1149, 1153–54 (9th Cir.2007). The ALJ must ask the expert to
            explain the conflict and "then determine whether the vocational expert's
7           explanation for the conflict is reasonable" before relying on the expert's testimony
            to reach a disability determination. *Id.; see also* Social Security Ruling 00–4P,
8           2000 WL 1898704, at *2 (Dec. 4, 2000). The ALJ's failure to resolve an apparent
            inconsistency may leave us with a gap in the record that precludes us from
9           determining whether the ALJ's decision is supported by substantial
            evidence. *See Massachi,* 486 F.3d at 1154 (stating that "we cannot determine
10          whether the ALJ properly relied on [the vocational expert's] testimony" due to
            unresolved occupational evidence).
11

12

13   *Id.* at 846.

14          Here, the ALJ's residual functional capacity determination limits Plaintiff to work

15   involving no depth perception and "large print or larger written materials."  (A.R. 25).  However,

16   the jobs proffered by the vocational expert all require "near acuity vision at 20 inches or less for

17   up to two-thirds of the workday).  Plaintiff claims that this is an apparent conflict which requires

18   reconciliation by the ALJ.

19          The Commissioner responds that there is no conflict.  It points to the definition of near

20   acuity as "clarity of vision at 20 inches or less."  U.S. Dep't of Labor, Selected Characteristics of

21   Occupations Defined in the Revised Dictionary of Occupational Titles (1993), Appendix C.  The

22   Commissioner argues that "[a]n inability to read small print is not the same things as an inability

23   to see objects within 20 inches of one's face."  (ECF No. 14, at p. 9).

24          The Commissioner also points to cases in other courts finding no inconsistency between

25   limitations regarding the size of print and jobs that require near visual acuity.  *See, e.g., Bellamy*

26   *v. Commissioner of Social Security* 734 Fed.Appx. 735, 737 (11th Cir. 2018) (unpublished)

27   ("Given that the ALJ did not find that Bellamy has a limited capacity to see close objects and that

28   the DOT does not indicate that a marker must be able to read smaller than 12-point print, we

4

1  conclude that there is no conflict between the VE's testimony and the DOT with regards to the
2  marker occupation."); *Johns v. U.S. Com'r Social Sec. Admin.*, No. CIV.A. 07-CV-1566, 2008
3  WL 3876250, at *3 (W.D. La., Aug. 19, 2008) ("It is also notable that the RFC did not define the
4  limitations at issue as permitting frequent, occasional, or other amounts of near visual acuity,
5  which Plaintiff refers to as employed in *Selected Characteristics.* Rather, the RFC defined the
6  limitations with more task-oriented descriptions such as the ability to read large print but not fine
7  print. The ALJ, under these circumstances, obtained reliable evidence that is not squarely in
8  conflict with the DOT and that was explained to be based on other experiences.").

9       Furthermore, while the Commissioner concedes that "a garment sorter might need to read
10  smaller print, since the *Dictionary* defines its duties to include sorting garments 'according to a
11  lot and size numbers recorded on tags and labels attached to garments,'" that "the other two
12  occupations, counter attendant and dry cleaner, represented 180,000 jobs nationwide."  (ACF No.
13  14, at p. 9).

14       In reply, Plaintiff argues that even the remaining positions require reading small print.
15  According to the DOT, a dry cleaner must "examine garment for soil and determine type of soil"
16  and "a counter attendant must be able to "itemize and total checks for service."  DOT code
17  311.477-014.

18       While the Court appreciates that limitations regarding print size do not necessarily
19  contradict requirements for near visual acuity, they are related issues.  The Court notes that the
20  ALJ imposed this limitation in the RFC after receiving opinions regarding Plaintiff's visual
21  acuity, noting that one examination revealed "His visual acuity with both eyes (and his left eye)
22  was 20/70." (A.R. 29).  Moreover, the ALJ gave substantial weight to the opinion of Dr. Damania
23  who gave the opinion that "[d]ue to right-eye blindness and central visual acuity of 20/70 in the
24  left eye, the claimant was limited to tasks requiring gross vision only.  **He was limited in** depth
25  perception, **near acuity**, and far acuity."  (A.R. 34, emphasis added). This record suggests that
26  the limitation of print size in this RFC was related to limitations in visual acuity, including near
27  visual acuity, for Mr. Padilla.  Thus, while the two concepts may not always be related, they
28  appear to be related in discussing Mr. Padilla's own impairments.

Under these circumstances, remand for additional consideration and explanation regarding this potential inconsistency from the vocational expert is warranted.

**III.     Conclusion**

For the foregoing reasons, the Court finds that the ALJ erred in failing to provide germane reasons to disregarding the testimony of Ms. Padilla, especially regarding Mr. Padilla's inability to follow instructions.  Additionally, the ALJ erred in failing to reconcile the apparent conflict between the vocational expert's testimony and the DOT as discussed above.

The Court thus reverses the decision of the Commissioner and remands this matter for further consideration consistent with this opinion.

IT IS SO ORDERED.

Dated:   **September 2, 2020**          /s/ _Erica P. Grosjean_

UNITED STATES MAGISTRATE JUDGE